IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:11-CR-107-FL-2
4:13-CV-153-FL

| | | |
|---|---|---|
| RENATO TORRES-EGUINO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This case comes before the court on petitioner's pro se motion (D.E. 67[1]) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("petition") and the government's motion to dismiss (D.E. 73). These matters were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Minute Entry dated 14 May 2014). Following an evidentiary hearing and full briefing by the parties,[2] these matters are now ripe for ruling. For the reasons stated herein, it will be recommended that the petition be denied and that the government's motion to dismiss be granted.

---

[1] The petition was originally filed at D.E. 63. However, petitioner filed a corrected petition (D.E. 67) to conform to applicable procedural rules in response to the court's directive (*see* D.E. 65). Because the grounds alleged in the original petition are the same as those raised in the corrected petition, all references to the petition herein will be to the corrected petition.

[2] Petitioner filed a memorandum in support of his original petition (D.E. 63-1), but not one in support of his corrected petition. Because the corrected petition asserts the same claims as the original petition, the court will treat the memorandum supporting the original petition as also supporting the corrected petition. The government filed a memorandum (D.E. 74) in support of its motion to dismiss, and petitioner filed a response (D.E. 78) in opposition to it. Following the evidentiary hearing, the parties each filed supplemental memoranda (D.E. 124, 129) as authorized by the court (*see* 23 Sept. 2014 Minute Entry (D.E. 114)).

# BACKGROUND

## I.  PETITIONER'S CONVICTION AND SENTENCING

On 11 October 2011, petitioner was charged in a 2-count indictment with: conspiracy to distribute and possess with the intent to distribute more than 5 kilograms of cocaine on or about 3 July 2011 in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Indict. (D.E. 1) ct. 1); and possession with the intent to distribute more than 5 kilograms of cocaine and aiding and abetting the same on or about 3 July 2011 in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (ct. 2). The indictment also charged co-defendant Jorge Luis Acosta-Muro with both counts.

On 12 December 2011, petitioner pleaded guilty to count 1 (*see* 12 Dec. 2011 Minute Entry (D.E. 28); Transcript of arraignment and Rule 11 hearing ("arraignment hearing") ("Arr. Tr.") (D.E. 82)) pursuant to a plea agreement (D.E. 30). Petitioner was provided a Spanish interpreter for the hearing. (Arr. Tr. 3:22-24). Before petitioner entered his plea, the court explained to him, in detail, his various rights, including his right of appeal (Arr. Tr. 9:8-17; 19:10 to 20:8[3]); the maximum sentence he faced for the charges to which he was pleading guilty (*id*. 15:25 to 16:20); and the court's role as making the final determination on his sentence, regardless of any sentencing recommendation in the plea agreement (*id.* 20:9-18). Petitioner repeatedly acknowledged that he understood what the court had explained to him. (*Id*. 14:16-19; 16:20-23; 18:19-22; 19:10 to 20:8; 20:9-18). Petitioner also confirmed, when asked by the court, that no one had threatened him or forced him to plead guilty, or made any promise to him that induced him to plead guilty. (*Id*. 18:11-18; 20:19-22). In the plea agreement, petitioner made similar acknowledgements regarding sentencing and his appeal rights. (Plea Agmt. ¶¶ 2.c., 3.c., 5).

---

[3] Citations to page numbers in all documents in the record are to those assigned by the court's CM/ECF electronic filing system.

2

On 10 July 2012, petitioner was sentenced to 236 months' imprisonment and 5 years' supervised release, and count 2 was dismissed pursuant to the plea agreement. (J. (D.E. 57) 1-3). Petitioner was, again, provided a Spanish interpreter for the hearing. (Transcript of Sentencing ("Sent. Tr.") (D.E. 62) 3:1-7). After imposing the sentence, the court again explained to petitioner his appeal rights, including the requirement that any notice of appeal be filed within 14 days of the entry of judgment, and specifically informed petitioner that, if requested, "the clerk will fill out paperwork for you." (Sent. Tr. 38:19 to 39:3). Petitioner did not appeal his conviction.

## II.  THE § 2255 PETITION

On 21 June 2013, petitioner filed the instant § 2255 petition. In it, he raised two claims: (1) counsel was ineffective for failing to file a notice of appeal after being instructed to do (Pet. 4 (Ground 1)); and (2) counsel was ineffective for failing to appeal the sentencing enhancement applied to petitioner's sentence for possession of a firearm on the grounds that this enhancement was based on false information (Pet. 5 (Ground 2)).

## III.  PROCEEDINGS ON THE § 2255 PETITION

Upon review of the petition and the government's motion to dismiss, the undersigned concluded that an evidentiary hearing was required on the claim raised in Ground 1 of petitioner's motion that trial counsel, Myron T. Hill, Jr., failed to file an appeal at petitioner's request. (*See* 20 May 2014 Order (D.E. 79)). The undersigned appointed counsel for petitioner for the purposes of the hearing. (*See* 10 June 2014 Order (D.E. 83); *see also* Notice of Attorney Appearance by Lynne Louise Reid (D.E. 84)). The hearing ("§ 2255 hearing") was conducted on 23 September 2014 (*see* D.E. 114), for which petitioner was provided an interpreter (Transcript of § 2255 Hearing ("Tr.") (D.E. 116) 3:5-8).

At the hearing, petitioner testified on his behalf, and the government presented the testimony of Mr. Hill. (*See generally,* Tr.). The court also admitted two exhibits offered by the government (*see* Hrg. Ex. List (D.E. 115)): a copy of the inside cover of Mr. Hill's "Rule 35" file folder for petitioner (Gov.'s Ex. 1; Tr. 37:9 to 39:17); and a copy of a chart used by Mr. Hill to document meetings with his clients (Gov.'s Ex. 2; Tr. 30:8-21).

During petitioner's closing argument at the hearing (*see* Tr. 57:16 to 59:14) and in his supplemental memorandum (Pet.'s Suppl. Mem. 2-11), petitioner presented two new arguments in support of his ineffective assistance of counsel claim. He asserts that because of his limited ability to understand and communicate in English and because Mr. Hill failed to have an interpreter present during the post-sentencing meeting, he was unable to instruct Mr. Hill to file an appeal (Ground 3) and any consultation by Mr. Hill about an appeal during the meeting was ineffective (Ground 4).

## DISCUSSION

### I. NEED FOR AN EVIDENTIARY HEARING

As previously noted, the court conducted an evidentiary hearing on Ground 1 of petitioner's motion, during which petitioner first asserted Grounds 3 and 4. With respect to the claim raised in Ground 2, the court had determined that the prehearing record clearly showed that petitioner was not entitled to relief on this claim and that an evidentiary hearing was not needed to resolve it. Nonetheless, evidence and argument presented at the hearing was relevant to Ground 2. With respect to Grounds 3 and 4, the court concludes that, based on the evidence and arguments presented at the hearing and the post-hearing supplemental briefing by the parties, no further evidentiary hearing is needed to resolve them.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Standard of Review for § 2255 Motions

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a preponderance of the evidence. *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C. 9 Oct. 2013) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 Fed. Appx. 972, 973 (4th Cir. 2007) (citing *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)).

### B. Motions to Dismiss under Rule 12(b)(6) in § 2225 Proceedings

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at *4 (4th Cir. 2 Apr. 1990); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (vacating district court's order allowing the government's motion to dismiss petitioner's motion under 28 U.S.C. § 2254

("§ 2254")[4] because the district court did not properly apply the Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition); Rule 12, Rules Governing § 2255 Proceedings (expressly allowing the application of the Federal Civil Rules where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or

---

[4] Section 2254 also incorporates the Federal Rules of Civil Procedure. *See* Rule 12, Rules Governing § 2254 Proceedings; *see also* Fed. R. Civ. P. 81(a)(4).

"naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).

### C. Ineffective Assistance of Counsel

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id*. at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Id*.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. The Court further emphasized that it "employ[ed] the term 'consult' to convey a specific meaning–advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal

reasonably relies upon counsel to file the necessary notice." *Id.* "If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." *Hudson v. Hunt*, 235 F.3d 892, 896 (4th Cir. 2000).

### D. Legal Standards for Determining Credibility

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

### III. PETITIONER'S ALLEGED REQUEST FOR AN APPEAL (GROUND 1)

The court first turns to the claim raised by petitioner in Ground 1 of the petition that he received ineffective assistance of counsel because Mr. Hill failed to file an appeal as instructed by him. It is undisputed by the parties that Mr. Hill met with petitioner immediately following the sentencing hearing in the courthouse holding cell ("post-sentencing meeting"). (Tr. 14:13-16; 34:22 to 35:8). In the memorandum in support of his petition and in his response to the government's motion to dismiss, petitioner asserts that it was during this meeting that he instructed Mr. Hill to file an appeal. (Pet.'s Mem. 3; Pet.'s Resp. 2). He further alleges that he

8

had an understanding that Mr. Hill was going to file an appeal. (Pet. 4 ¶ 12(a), (b)(2) ("It was understood that counsel Myron T. Hill, Jr. would file a Direct Appeal, because I did advise him to do so."); Pet.'s Resp. 3). Petitioner contends that it was not until approximately five months after his sentencing that he learned that Mr. Hill had not filed an appeal as instructed. (Pet.'s Mem. 3; Pet.'s Resp. 2).

The court concludes that petitioner has failed to establish by a preponderance of the evidence that he asked Mr. Hill to file an appeal. The primary reason is that petitioner's testimony and his post-hearing supplemental memorandum directly contradict this claim. Petitioner testified at the hearing that he was *unable* to instruct Mr. Hill to file an appeal at the post-sentencing meeting because of an alleged language barrier and the absence of an interpreter.[5] Specifically, petitioner testified that due to his limited ability to communicate in English, he was unable to ask Mr. Hill to "file an appeal" (Tr. 24:2 to 25:1), but rather could only say in English, "Help me" (Tr. 15:8-14, 20-24; 22:6-10). He further testified that had there been an interpreter in the room, he would have "definitely" asked Mr. Hill to file an appeal. (Tr. 55:11-17). Petitioner has also contradicted his original assertion that he had an understanding that Mr. Hill was going to file an appeal. He testified that after the post-sentencing meeting he understood that Mr. Hill was not willing to file an appeal on his behalf. (Tr. 16:23 to 17:1; 19:5-7). Rather, he believed that Mr. Hill would not file an appeal unless petitioner agreed to cooperate with the government. (Tr. 16:3-12).

Petitioner further testified that he did not attempt to ask Mr. Hill to file an appeal when they met again on 12 July 2012, two days after sentencing ("12 July meeting") (Tr. 17:16 to

---

[5] While Mr. Hill could not specifically recall whether an interpreter was present, he did not dispute petitioner's testimony that he did not provide one given that he was able to communicate with petitioner in English. (Tr. 34:25 to 35:4). Accordingly, the court finds that the parties do not dispute that an interpreter was not present at the post-sentencing meeting.

9

18:21), or at any other time prior to the expiration of the 14-day appeal deadline (Tr. 18:22-25; 23:1-5).[6] When asked why, he testified, "Well, honestly, because I really didn't want anything else to do with him, I didn't feel like he helped me at all." (Tr. 19:1-4; *see also* Tr. 23:1-5 (testifying that he did not contact Mr. Hill within 14 days of his sentence to request an appeal because he "didn't want to see [Mr. Hill] anymore, . . . and I just put everything on God")).

Moreover, Mr. Hill's testimony corroborates petitioner's assertion that he did not expressly request an appeal. Mr. Hill testified that petitioner did not ask him to file an appeal at either the post-sentencing or the 12 July meeting. (Tr. 35:16-17; 36:10-12). His notes from the 12 July meeting include the notation "no appeal." (Tr. 39:8-10, 19-21; Gov.'s Ex. 1). Mr. Hill further testified that petitioner's brother, with whom Mr. Hill communicated during his representation of petitioner, never mentioned the filing of an appeal in any of their conversations about petitioner's case.[7] (Tr. 45:21-25; 53:10-22). Mr. Hill also testified that had petitioner asked him to file a notice of appeal, he would have done so by simply using a form notice of appeal that is stored on his computer for this purpose. (Tr. 40:13-22).

For the foregoing reasons, the court concludes that petitioner has failed to show by a preponderance of the evidence that he requested that Mr. Hill file an appeal. Accordingly, petitioner's ineffective assistance of counsel claim raised in Ground 1 of his petition should be denied.

---

[6] Both petitioner and Mr. Hill testified that petitioner contacted Mr. Hill by letter on one occasion after the expiration of the 14-day appeal deadline requesting a copy of his file so that he could initiate legal proceedings. (Tr. 22:21-25; 39:22 to 40:9).

[7] Petitioner included with his supplemental memorandum two affidavits from his brother, Rosendo Eguino Torres, dated 22 July 2014 (D.E. 124-2) and 15 November 2014 (D.E. 124-1), respectively, in which his brother states that he spoke with Mr. Hill about an appeal. While the 22 July 2014 affidavit was signed before the evidentiary hearings, petitioner did not seek to have it admitted. The court has not considered these affidavits because this individual was not called to testify at the hearing and, consequently, not subject to cross examination by the government.

10

Case 4:11-cr-00107-FL   Document 132   Filed 03/15/16   Page 10 of 19

## IV. PETITIONER'S ALLEGED INABILITY TO REQUEST AN APPEAL DUE TO LACK OF AN INTERPRETER (GROUND 3)

As already discussed, petitioner raised a new argument at the hearing and in his supplemental memorandum that he was unable to instruct Mr. Hill to file an appeal during the post-sentencing meeting because of his limited ability to communicate in English and because no interpreter was present. Courts have recognized that "[c]ounsel's inability to communicate with his client because of a language barrier may render his assistance constitutionally ineffective." *Gallo-Vasquez v. U.S.*, 402 F.3d 793, 799 (7th Cir. 2005). However, as discussed below, the credible evidence shows that petitioner had the ability to communicate his request for an appeal to Mr. Hill without the assistance of an interpreter.

### A. Petitioner's Testimony

At the hearing, petitioner testified that he had been in the United States for over 20 years,[8] that his common-law wife of 12 years was English-speaking, and that he had learned some English from his wife and the two children he had with her. (Tr. 7:9-10; 7:20 to 8:1; Presentence Investigation Report ("PSR") 7). Nevertheless, he testified that his understanding of English at the time of his sentencing hearing was "limited, very poor." (Tr. 7:11-14). He further testified, as previously discussed, that this limited ability to communicate in English prevented him from stating precisely to Mr. Hill that he wanted to appeal (Tr. 24:2 to 25:1) at the post-sentencing meeting, and, had an interpreter been available to him, he would have been able to do so (Tr. 55:11-17). In addition to allegedly being unable to speak to Mr. Hill, petitioner also testified that he was unable to understand what Mr. Hill said to him. (Tr. 14:19-20).

The court finds petitioner's testimony that he was unable to understand or communicate with Mr. Hill not credible. As previously discussed, petitioner's credibility is substantially

---

[8] At the time of his sentencing in July 2012, he would have been in the United States for approximately 18 years.

eroded, in a general sense, because he materially changed his version of the facts between the filing of his petition and the hearing before the undersigned. Further, petitioner's credibility as to the alleged language barrier is specifically compromised by inconsistencies and contradictions in his testimony on this issue. For example, despite his claim that he was unable to understand what Mr. Hill was saying to him, petitioner testified that Mr. Hill explained to him during the post-sentencing meeting that the only way Mr. Hill could help him pursue a reduced sentence was for him to cooperate with the government by providing information and that he told Mr. Hill that he did not have any information to provide.[9] (Tr. 16:3-9). In addition, he testified that because of his limited understanding of English, he did not know whether Mr. Hill had explained the advantages and disadvantages of appeal during the meeting (Tr. 17:7-12), but then later contradicted this testimony when he unequivocally testified that Mr. Hill *did not* discuss an appeal with him two days later at the 12 July meeting. This testimony follows:

> Q. And during [the 12 July meeting] did [Mr. Hill] ever talk to you about an appeal, about filing an appeal, about wanting to have an appeal filed?
>
> A. No, none of that was discussed.
>
> Q. He never mentioned the word, appeal?
>
> A. No. No.

(Tr. 18:5-10).

Further, despite the alleged language barrier, petitioner testified that he did not attempt to indicate to Mr. Hill that he was unable to understand or that he needed an interpreter. (Tr. 14:23 to 15:4). When asked why he did not do so, he responded not that he was unable to

---

[9] This exchange is corroborated by Mr. Hill's testimony. (*See, e.g.*, Tr. 34:25 to 35:15; 36:3-9 (testifying that during the post-sentencing meeting he discussed cooperation with the government as petitioner's best option for a reduced sentence)).

communicate this to Mr. Hill, but rather that "it was a very tense situation and I wasn't thinking clear enough *to say that*." (Tr. 15:5-7 (emphasis added)).

Moreover, there is no evidence that petitioner ever made any complaint about being unable to understand Mr. Hill without the assistance of an interpreter. The court finds it particularly telling that he did not raise any such concerns at either the arraignment and sentencing hearings, when he represented to the court that he had been provided interpreter services when needed. (Arr. Tr. 17:6 to 18:10; Sent. Tr. 3:18-21). As one court has explained, a "petitioner's failure to complain [until the filing of a § 2255 petition] about a problem that would have been obvious to him—an almost complete inability to communicate with his lawyer [without an interpreter]—calls into question whether such a problem really existed." *Gallo–Vasquez,* 402 F.3d at 799 n.1.

Given these material contradictions in petitioner's testimony and prior statements to the court, the court finds that his testimony lacks sufficient credibility to support his claim that, without an interpreter at the post-sentencing meeting, he was unable to communicate to Mr. Hill that he wanted to file an appeal. This claim should be denied on this basis alone.

**B.     Mr. Hill's Testimony**

Notwithstanding petitioner's failure to provide credible testimony or other evidence in support of his claim, the credible testimony of Mr. Hill shows that petitioner was capable of communicating effectively without an interpreter. Mr. Hill testified that throughout his representation of petitioner, during which he met with petitioner approximately 15 times (Tr. 27:1-3; 43:1-6), he had no problems communicating with petitioner without an interpreter (Tr. 41:20-22 (testifying that he never had any question that petitioner understood him); 50:25 to 51:1 ("I always communicate with [petitioner] very well, I've never felt like we were

miscommunicating."). Mr. Hill testified that while he used an interpreter in his initial meetings with petitioner, he eventually determined that he was able to adequately communicate with petitioner without one, in particular, because when he would ask a question to be interpreted, petitioner "would respond in English before the interpreter could say it in Spanish." (Tr. 41:10-17; *see also* Tr. 27:6-16). Mr. Hill also explained that he would ask petitioner probing questions to assure that petitioner understood him. (Tr. 45:3-9; 47:8-16). Mr. Hill further testified that additional confirmation that petitioner understood their conversations was provided when, two or three days after a meeting, petitioner's brother would call him and repeat, verbatim, statements he had made to petitioner in the meeting. (Tr. 45:11-17).

The court finds Mr. Hill's testimony on these material factual issues to be credible on several grounds. First, Mr. Hill's testimony was matter-of-fact, not adversarial, in tone. He evinced no hostility toward petitioner, but rather genuine concern that petitioner achieve the best possible outcome in his case. (*See, e.g.*, Tr. 44:5-6 (testifying, "I like my client, I wish him the best, if he can get an appeal today, I'd like to see him get one.")). His credibility is further supported by his substantial experience as a criminal defense attorney. He has been representing defendants in federal criminal cases for 30 years. (Tr. 25:20-22). This experience, which no doubt has included Spanish-speaking defendants, makes it unlikely that he would fail to provide an interpreter to petitioner if the circumstances had warranted one.

Moreover, Mr. Hill's conduct in representing petitioner, as described in his testimony, is consistent with that of an experienced criminal defense lawyer. As previously noted, he met with petitioner approximately 15 times during the proceedings. Mr. Hill's testimony demonstrates a conscientious and proper effort on his part to make sure that petitioner received the lowest sentence possible under the circumstances of the case. Mr. Hill specifically testified

14
Case 4:11-cr-00107-FL   Document 132   Filed 03/15/16   Page 14 of 19

that after reviewing the government's evidence against petitioner, he determined that the government had a strong case and, accordingly, recommended that petitioner accept the plea agreement offered by the government and pursue cooperation with the government as a means of achieving the lowest possible sentence. (Tr. 28:1-8; 32:1-12). He further testified that he raised two objections to the PSR challenging both the drug amount attributed to petitioner as well as a proposed firearm enhancement. (Tr. 32:3-5, 15-22; PSR (D.E. 42) 12 ¶ 1-2; Sent. Tr. 28:18 to 29:18).

For the foregoing reasons, the court concludes that the credible evidence demonstrates that petitioner had the ability to communicate a request to Mr. Hill to file an appeal without the assistance of an interpreter.

Nevertheless, even were the court to find that petitioner was unable to adequately communicate that he wished to file an appeal during the post-sentencing meeting, he was not without the means or the opportunity to do so before the expiration of the 14-day appeal period had that been his intent. For example, he could have requested the presence of an interpreter for the 12 July meeting or requested another meeting or phone call with Mr. Hill with the assistance of an interpreter. He could have also relayed his alleged desire for an appeal to Mr. Hill through his brother, as he had done on other matters during the course of the proceedings. Furthermore, any inability to request an appeal at the post-sentencing meeting is harmless in that, as previously discussed, petitioner had decided not to pursue an appeal. (*See* Tr. 23:1-5 (testifying that he did not contact Mr. Hill within 14 days of his sentence to request an appeal because he "didn't want to see [Mr. Hill] anymore, . . . and I just put everything on God")).

## V. MR. HILL'S ALLEGED FAILURE TO PROPERLY CONSULT WITH PETITIONER ABOUT AN APPEAL (GROUND 4)

The second new argument that petitioner raised in closing arguments at the hearing and in his supplemental memorandum is that Mr. Hill failed to satisfy his obligation to consult with petitioner about an appeal at the post-sentencing meeting because petitioner was unable to adequately understand Mr. Hill's communications in English without the assistance of an interpreter.

For the reasons already discussed, the court has rejected petitioner's allegation that he was unable to understand or communicate with Mr. Hill without an interpreter. Further, the credible testimony of Mr. Hill shows that he consulted with petitioner regarding his appeal options on at least five occasions, some of them with an interpreter present. For example, prior to petitioner entering his guilty plea at the arraignment hearing, Mr. Hill met with petitioner to review the plea agreement and explained, with the assistance of an interpreter, how the appeal waiver provision of the plea agreement limited his right of appeal. (Tr. 28:16 to 29:14). At the arraignment hearing, petitioner represented to the court under oath that he had discussed the plea agreement with Mr. Hill, that it had been translated into Spanish for him, and that he understood all of its terms. (Arr. Tr. 17:6 to 18:10). The court also specifically discussed the appeal waiver in the plea agreement and explained to petitioner that it would make any appeal of his sentence difficult. (Arr. Tr. 19:5-9).

Further, in response to a clarifying question by petitioner on the effect of the appeal waiver, the court permitted petitioner an opportunity to discuss his question with Mr. Hill with the assistance of an interpreter. (Arr. Tr. 19:14-20). After petitioner had conferred with Mr.

Hill, the court confirmed that petitioner understood that the appeal waiver severely restricted his right to appeal. (Arr. Tr. 19:22 to 20:8).[10]

Mr. Hill again reviewed petitioner's appeal options under the plea agreement twice before sentencing (Tr. 31:13-15; 32:1-9; 34:2-21) and confirmed to the court at the sentencing hearing that he had done so (Sent. Tr. 39:9-21).[11] Mr. Hill subsequently discussed appeal options with petitioner at both the post-sentencing and 12 July meetings. (Tr. 34:22 to 35:8; 35:21 to 36:9). Despite these repeated discussions of appeal options with petitioner, Mr. Hill, as previously discussed, testified that neither petitioner nor his brother on his behalf expressed any interest in pursuing an appeal.

---

[10] In his supplemental memorandum, petitioner contends that his clarifying question to the court indicates that he was confused about the appeal waiver in the plea agreement. However, as noted, after taking the opportunity to confer with Mr. Hill, with the assistance of an interpreter, he represented to the court, under oath, that he understood the restrictions of the waiver. Petitioner also cites to his acceptance of a subsequent offer by the court to further discuss his plea and case with Mr. Hill before entering his plea (Arr. Tr. 20:23 to 21:11) as evidence of his confusion. Again, following the conferral petitioner represented to the court that Mr. Hill had answered all of his questions. (Arr. Tr. 21:10-12). The Fourth Circuit has held that "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted) (quoting *United States v. White*, 366 F.3d 291, 296 (4th Cir. 2004)); *see also Burket v. Angelone*, 208 F.3d 172, 191 (4th Cir. 2000) ("Absent clear and convincing evidence to the contrary, [defendant] is bound by the representations he made during the plea colloquy."). For the foregoing reasons, the court finds that petitioner has failed to demonstrate that he should not be bound by his representations to the court.

[11] Petitioner points to this discussion between Mr. Hill and the court as indicating that petitioner did not understand the appeal process. The court disagrees. The subject exchange follows:

> THE COURT: [Petitioner], did you have any questions about your appeal rights? Sounds like he might.
>
> MR. HILL: I don't know if he understands the appeal process, Your Honor, but I told him he had 14 days, and I would explain it to him.

(Sent. Tr. 39:4-8). The court then proceeded to explain the appeal process to petitioner, and Mr. Hill confirmed to the court that this was the same process that he had explained to petitioner. (Sent. Tr. 39:9-21). At the § 2255 hearing, Mr. Hill testified that while petitioner may have appeared confused about the 14-day time period, thereby prompting the court's inquiry, he knew that petitioner understood his appeal rights and, accordingly, told petitioner that they would discuss it further after the hearing. (Tr. 34:13-25).

For the foregoing reasons, the court concludes that the credible evidence demonstrates that Mr. Hill satisfied his obligation to consult with petitioner about an appeal of his sentence. Accordingly, petitioner's claim that Mr. Hill did not meet this obligation should be denied.

## VI.   MR. HILL'S FAILURE TO APPEAL FIREARM ENHANCEMENT (GROUND 2)

In Ground 2 of his petition, petitioner contends that he received ineffective assistance of counsel because Mr. Hill did not file an appeal challenging the evidence used to support the enhancement of his sentence for possession of a firearm pursuant to U.S. Sentencing Guideline § 2D1.1(b)(6). Because the court has already found that petitioner did not request that Mr. Hill file an appeal, Mr. Hill was under no obligation to do so to raise a challenge to the firearm enhancement. Accordingly, this claim is without merit and should be denied.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the government's motion (D.E. 73) to dismiss be GRANTED and the § 2255 petition (D.E. 67) be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 29 March 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 15th day of March 2016.

_____
James E. Gates
United States Magistrate Judge